## CAMPBELL PAINT & VARNISH CO. *v.* HALL.

[95 South. 641. No. 22963.]

1. SALES. *Vendor has lien on goods sold merchant for resale for unpaid purchase money while in hands of first purchaser or one deriving title thereto with notice.*

By virtue of section 3079, Code of 1906 (Hemingway's Code, section 2436), providing that a vendor of personal property shall have a lien thereon for the purchase money while it remains in the hands of the first purchaser or one deriving title through him with notice, a seller of goods to a merchant for the purpose of resale by the latter in the ordinary course of his mercantile business has a lien thereon for the unpaid purchase money while

in the hands of the first purchaser, or of one deriving title, thereto with notice.

2. SALES. *Business sign statute does not derange priority of liens between creditors of common debtor.*

And such purchase-money lien is not affected by the fact that the first purchaser fails to comply with the business sign statute (section 4784, Code of 1906; Hemingway's Code, section 3128), for said statute does not have the effect to derange the priority of liens between creditors of a common debtor.

3. SALES. *Purchase-money lien not waived because of seller's knowledge that goods intended for resale in regular course of business.*

The seller of goods does not waive his purchase-money lien given by section 3079, Code of 1906 (Hemingway's Code, section 2436), because alone of his knowledge that the purchaser intends them for resale in the regular course of his mercantile business.

4. BANKRUPTCY. *Purchase-money lien held to prevail as against title of trustee in bankruptcy of first purchaser.*

Such purchase-money lien will prevail as against the claim of title to the goods by a trustee in bankruptcy of the first purchaser, in a case where the goods were sold to the bankrupt more than four months prior to his petition in bankruptcy, and at the time of the filing of said petition the seller had instituted the proceeding provided by said statute for the enforcement of his lien, and the goods had been seized thereunder and segregated from the balance of the stock of the bankrupt.

Appeal from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by the Campbell Paint & Varnish Company against J. P. Hall, trustee in bankruptcy of S. P. Cagle. From a judgment for defendant, plaintiff appeals. Reversed, and judgment for plaintiff.

*Chambers & Trenholm,* for appellant.

This case, tried upon an agreed state of facts, whereby it was shown that appellant has sold to one Cagle, a merchant in Jackson, Mississippi, certain goods, wares and merchandise on credit, which had become part of his stock

in trade, and which had not been paid for, and which were for sale in the usual course of business by the merchant, within the knowledge of appellant, and which were taken possession of by the sheriff of Hinds county under a writ of seizure issued in the suit of appellant against Cagle, for the purchase money thereof, prior to the time of the filing of the petition in bankruptcy by said Cagle, presents but two issues, both of which are clearly defined:

First: Whether such goods come within the terms of section 3079 of the Code of 1906, section 2436 of Hemingway's Code), giving the vendor of personal property a lien thereon for the purchase money while the property remains in the hands of the first purchaser. Second: What effect, if any, section 4784 of the Code of 1906 (section 3129 of Hemingway's Code), known as the "Sign Statute," has upon the case shown by the record.

Upon the first of the two propositions stated above, we refer the court to a printed brief in the case of *Brown Shoe Company* v. *Wynne, Trustee,* U. S. Circuit Court of Appeals, June 1922, pages 13 to 21, inclusive, a copy of which brief has been filed in this case as part of the original brief for appellant, by Messrs. Thompson & Thompson. The facts in that case were identical with the facts in this case, except that in the Wynne case there was no showing that the sale was made in Mississippi, adding a complication, whereas in this case the sale was made in Mississippi.

We would like to add just one other suggestion with reference to said first proposition, and that is: "The courts have no authority to ingraft exceptions upon the statute." *Williams* v. *Lee,* (Miss.), 94 So. 454, January 1923. In that case the court was discussing the Mississippi statute governing descent and distribution—property rights! In this case we have the statute granting the vendor of personal property a lien thereon—a property right, appellee is asking the court to ingraft upon the vendor's lien statute an exception as to goods clearly within the terms of the statute, because of some waiver or matter of public policy.

The judgment of the lower court states three propositions, viz.: That the lien is avoided by the sign statute; that there was a waiver of the lien by selling goods intended for re-sale; and that the lien is contrary to public policy as indicated by the act of 1920. The court held that there was a waiver, and that it was therefore unnecessary to consider the other two propositions. As to the sign statute, we will refer to that later, but would like to call the court's attention to the fact that appellee's brief, after setting forth the facts and the two statutes involved, is devoted entirely, to a discussion of the sign statute, and, except for a portion of an opinion by Judge HOLMES *in the Wynne case, supra,* in which case he was later reversed by the circuit court of appeals, there is no attempt made to sustain the finding of the lower court that there was a waiver of the lien by appellant. And Judge HOLMES did not hold that there had been a waiver, but that the legislature did not intend to give a lien on goods knowingly sold for re-sale. Ingrafting an exception on the statute! Judge HOLMES did hold that by selling goods for re-sale the vendor would waive its lien against the trustee, but we assert that that could not extend beyond a case where the goods came into the hands of the trustee, which is not the case here. It will be time enough to pass upon that proposition when it is reached. That will be a question of bankruptcy law rather than of state law, however, and the United States circuit court of appeals has already held in the case of *Norris* v. *Trenholm,* cited in brief of appellee, page 15, that the lien granted by this statute is not affected by bankruptcy. We might add that the contention of appellee as to disrupting the bankruptcy law, brief, pages 22 and 23, was urged upon the federal courts in the Norris-Trenholm case, but did not receive notice by them. And the decision of the same court in *Brown Shoe Co.* v. *Wynne,* silences all these contentions, where the goods were seized by the state courts prior to bankruptcy, and refers the trustee to the state courts for such relief as

he may be able to obtain as a matter of state law govern-
ing such liens.    (281 Fed. Rep., page 807).

As to whether there was a waiver, strictly speaking, we
refer again to the above-mentioned pages of the printed
brief, and suggest that this case must finally rest, if affirm-
ed, upon an exception to be ingrafted upon the statute,
unless relief can be found under the sign statute.    Upon
the application of the sign statute we could again refer
to the above-mentioned printed brief, pages 25 to 33, in-
clusive, which gives our ideas upon the subject.    *Gumble*
v. *Koon,* 59 Miss. 264, cited by appellee, brief, page 7, was
another case of secret ownership being denied in favor
of a creditor; not a contest between creditors, and no lien
involved.    Note please, also, that that case is an authority
for the proposition that no exceptions should be ingrafted
upon a statute.    *Paine* v. *Hall Safe & Lock Co,* 64 Miss.
175, cited by appellee's brief, page 8, was another case of
secret ownership—title retention—and not a contest be-
tween creditors, as was *Hall* v. *Berg,* 64 Miss. 187, like-
wise cited by appellee, brief, page 8, and *Shannon* v. *Blum,*
60 Miss. 828.    *Citizens Bank* v. *Studebaker,* 71 Miss. 544.
appellee's brief, page 10, and *Columbus Buggy Co.* v. *Tur-
ley,* 73, Miss. 529, appellee's brief, page 11, were similar
cases where others set up secret ownership and were denied
in favor of creditors, except that in the latter case the
secret claim was denied in favor of a purchaser.

In the case of *Bank* v. *Schaff,* 108 Miss. 121, cited by
appellee, brief, page 12, Schaff placed the pianos in ques-
tion with the trader on consignment, with title reserved,
and not with a vendor's lien retained, by contract or stat-
ute, as stated by appellee.    In other words, another case
of secret ownership denied in favor of a creditor.    *Gal-
laspy* v. *International Harvester Co.* 109 Miss. 136, cited
by appellee, brief, page 13, is yet another case of title-re-
tained contract falling before the statute in favor of credit-
ors, but through a trustee in bankruptcy, to vary the
monotony, the Harvester company undertaking to assert

its secret claim of ownership after bankruptcy. The Norris-Trenholm case was mentioned by the court as having been cited against its view of the law, and the court remarked that the sign statute had not been invoked in that case, judging from the fact that it was not mentioned in the opinion. Of course, the Norris-Trenholm case involved the vendor's lien proposition, not a secret claim of ownership, and the sign statute had no place in it.

Allow us to call the attention of the court to the outstanding fact that in every one of the foregoing cases either some creditor had levied upon the property in question, or it had passed to the creditors in a bankruptcy proceeding, or had been purchased by a third person, before the claimant undertook to assert his ownership. In the instant case the property was seized in the hands of the trader, the original purchaser, before bankruptcy and without any creditor having levied upon it, or without any third party having purchased it.

Appellee next cites Judge HOLMES' opinion in the *Brown Shoe Company case, supra,* but as he was reversed on jurisdictional grounds, the rest of the opinion becomes *obiter.* And in the case of *Valier & Spiers Milling Co.* v. *Foote,* another decision by the same judge, there was an attempted retention of title to certain flour sold for re-sale, and bankruptcy occurred before the Milling Company asserted its claim which it did in the bankruptcy court, and the sign statute was properly applied. So much of that opinion as deals with a vendor's lien is *obiter,* and is rested on the Brown Shoe Company case, before it was reversed. In the Shumaker case, by the same judge, bankruptcy had intervened before the vendor undertook to subject the property, and since the opinion cited shows that we were counsel in that case, we might add that an appeal was held in abeyance pending the decisions of the *Brown Shoe Company case, supra,* and in the light of the re-affirmance by the circuit court of appeals of the rule announced in the Norris-Trenholm case, that bankruptcy did not affect this

lien, the Shumaker case was compromised, for it was then recognized that the question involved had to be finally settled by this court, not by the federal courts.

As to the suggestion that the lien statute should not cover goods for re-sale because of public policy, permit us to say that the act of 1920 mentioned in the judgment of the lower court was chapter 243, Laws of 1920, authorizing the giving of deeds of trust on changing chattels and after-acquiring property of the same class, except stocks of merchandise. Now, if the legislature could override the settled policy of the courts on that question as to everything but merchandise, why could it not do so in the vendor's lien statute of 1906? Why could it permit the giving of contractual liens, and not be able to provde liens by statute? In other words, did it not do so?

In conclusion we respectfully ask the court to bear in mind, while considering this case, that this is a statutory, not a contractual lien; that no creditor had acquired a lien on the property, by execution or otherwise, nor had bankruptcy occurred, before seizure of the goods and that this is a contest between creditors of a common debtor, not beween crediors and a third person asserting ownership.

We respectfully submit that the judgment of the lower court should be reversed, and judgment entered here for appellant, condemning the property to be sold in satisfaction of its claim.

*Teat & Potter,* for appellee.

This case involves the interpretation and construction by our supreme court of two of our state statutes. The first statute in logical order for consideration is the "purchase money—lien on personal property—statute, Hemingway's Code, section 2436 (3079). The second statute to be considered is the business sign statute, a statute of frauds, Hemingway's Code, section 3128 (4784). The appellant in this case is asking the supreme court to hold that he has a lien under said statute on the goods as mentioned

in the present state of record. In order for us to enter into a consideration of the purpose and meaning of the business sign statute, we may briefly review the construction of our supreme court from time to time.

In the case of *Gumbel* v. *Koon,* 59 Miss. 264, one Buffington engaged in buying and selling cotton as a broker, against whom Koon recovered judgment and caused an execution to be issued and levied on certain cotton which Buffington had purchased in the usual course of business. Gumpel interposed a claimant's issue to the cotton which was decided adversely to him. *Gumbel* v. *Koon,* 59 Miss. 264; *Paine* v. *Hall Safe & Lock Co.,* 64 Miss, 175, 1 So. 56; *Hall* v. *Berg,* 64 Miss. 187, 3 So. 372; *Shannon* v. *Blum,* 60 Miss. 828; *Hall Self-Feeding Gotton Gin Company* v. *Berg,* 65 Miss. 185; *Paine* v. *Hall Safe & Lock Co.,* 64 Miss. 175; *Gumbel* v. *Koon,* 59 Miss. 264; *Shannon* v. *Blum,* 50 Miss. 828; *Columbus Buggy Company* v. *Turley,* 73 Miss. 529; *Merchants & Farmers Bank* v. *Schaaf,* 108 Miss. 121, 66 So. 402; *Gallaspy* v. *International Harvester Co. of America,* 109 Miss. 136, 67 So. 904.

Collier on Bankruptcy (10 Ed.), p. 1005, analyzing this provision of the bankrupt act above referred to has this to say: "The test is simple and easily applied. Could the property in question have been (1) transferred by, or (2) levied on and sold under judicial process against the bankrupt? If so, it passes to the trustee; if not, it does not— whether or not the property prior to the filing of the petition, could have been levied upon and sold under judicial process against the bankrupt, must be determined by the local law."

"Under our statute this engine could have been levied upon and sold under judicial process" against the hardware company. *Norris* v. *Trenholm,* 209 Fed. 827, 126 C. C. A. 551, is cited against this view of the law. This was a case arising in this state, and was controlled by our laws. It will be noted, however, that section 4784, Code of 1906, was not mentioned or considered by the court in

its opinion. We feel sure that this statute was not invoked in that case.

We now desire to call to the attention of the court construction of the Mississippi sign statute by the federal court. *In The Matter of Wright & Weissinger, Bankrupts,* 47 Am. Bankr. Rep. 283, decided by Judge HOLMES in December, 1921, and reported in 227 Federal Reports, 514, we respectfully submit is in point. It is true that this case was reversed by the court of appeals as reported under the style, of *Brown Shoe Company* v. *Wynne, Trustee,* 281 Fed. 807, but it was reversed on the question of jurisdiction and not in anywise upon the construction given by Judge HOLMES to the business sign statute.

We call the attention of the court to the case of *Valier & Spiers Milling Company* v. *Foote,* 47 Am. Bank. Rep. 501, decided by Judge HOLMES in January, 1922, which involves the construction of the Mississippi Commercial sign statute, and follows that line of decisions supported by *Gallaspy* v. *International Harvester Company,* 109 Miss. 136, 67 So. 904.

We also call attention of the court to the case of *In re S. J. Shumaker, Bankrupt,* 47 Am. Bank. Rep. 504, decided by Judge HOLMES in January, 1922, and especially to the opinion of S. P. Clayton, referee, which opinion is set out in full, and was approved by Judge HOLMES. This decision analyses the case of *Dodd* v. *Pratt,* 64 Miss. 123, involving a lien created by deed of trust which had been duly recorded and constructive notice given to its existence. Also the case of *Hall* v. *Stave Company,* 64 Miss. 175, and *Tufts* v. *Stone,* 70 Miss. 54, in which the supreme court recognized liens which had been duly recorded and constructive notice given of their existence.

We especially invite the attention of the court to the careful reading of this decision as showing a clear and correct conception of the settled policy and construction of

our supreme court, upon the business sign statute in ques-
tion.

The contention by counsel for appellee that this court
should sanction such serious modification and exception to
the business sign statute as to permit the enforcement of
the purchase money lien as contended in this case, would
totally emasculate the statute.   The assets of a bankrupt
merchant consists principally of merchandise purchased
upon credit.   In such cases every creditor, from whom the
bankrupt had purchased goods would have a lien to secure
his debt upon specific articles sold by him to the bankrupt
and every creditor whose goods could not be found in the
store would receive nothing of dividends in the general
distribution of assets, while those whose goods were found
in the store would receive an undue preference in the pay-
ment of their accounts.   This would be permitting secret
claims, based upon secret liens to totally destroy the fair
administration of the assets of the bankrupt among the
creditors.

Thus it is seen that the novel contention made by ap-
pellant must necessarily lead to confusion, impractica-
bility and injury to the fair administration of the assets
of the bankrupt.   In the average store there are necessarily
many articles, bought from many creditors, whose values
vary according to the time, season, circumstances and
style.   In this fortune of chance neither the creditor nor
the bankrupt are in any large measure responsible for the
kind of assets left in the store and to be administrated as
the property of the bankrupt.   But the result would be that
the creditor, whose property had been least desirable and
less sold, or limited to such short time, or other causes by
which it was retained in the store at the date of bank-
ruptcy, would be favored by the enforcement of such secret
lien.

All of these things clearly show the violation of the let-
ter and spirit of the bankrupt law, section 67, c and f.   We
have been unable to find any decisions upon this business

sign statute that directly or indirectly authorize or sanction the enforcement of any secret claim or lien by contract or by law. Upon the other hand it seems clear that such have been uniformly condemned by the decisions of our supreme court in every form in which they have reached the supreme court.

We respectfully submit that the decisions of the lower court was correct and that the case should be affirmed.

Anderson, J., delivered the opinion of the court.

This is a contest between appellant, the Campbell Paint & Varnish Company, a creditor of S. P. Cagle, merchant and trader, a bankrupt under the federal Bankruptcy Act, and appellee, J. P. Hall, trustee in bankruptcy; appellant claiming a purchase-money lien under section 3079, Code of 1906 (Hemingway's Code, section 2436), on goods wares, and merchandise sold by it to said Cagle before his bankruptcy, and appellee claiming the title to said goods for the benefit of the general creditors of said bankrupt freed from said alleged purchase-money lien. The case was tried by agreement of the parties before the court without a jury upon stipulated facts. There was a judgment for appellee, from which appellant prosecutes this appeal.

On the 29th day of July, 1921, said Cagle filed a voluntary petition in bankruptcy and was afterwards duly adjudged a bankrupt. More than four months before the filing of said petition appellant sold and delivered to said bankrupt certain goods, wares, and merchandise, which were the consideration for appellant's indebtedness against said bankrupt. Before the filing of said petition appellant had brought suit in the circuit court of the first district of Hinds county against said bankrupt to recover of him said indebtedness, and had instituted the proceeding provided by sections 3079 to 3081, inclusive, Code of 1906 (Hemingway's Code, sections 2436 to 2438, inclusive), to establish a purchase-money lien for the payment of said

indebtedness on that portion of said goods remaining unsold in the stock of merchandise of said bankrupt, and the writt provided by said statute had been issued and levied by the sheriff on said goods so remaining, which goods had been by him segregated from the balance of the stock. Therefore, when appellee was appointed trustee of said bankrupt, and when said Cagle was adjudged a bankrupt, as well as when his voluntary petition was filed, the goods in controversy had been taken by appellant's writ and separated from the balance of the stock of said Cagle and were in the custody of the sheriff thereunder. The following are the agreed facts upon which the cause was tried:

"It is hereby agreed between the attorneys for the plaintiff and defendant in the above-styled cause that the same may be tried before the court without a jury, and that for such purpose the following statement shall be considered the facts in this case: That S. P. Cagle was a merchant in the city of Jackson, Miss., doing business under the name and business sign of S. P. Cagle, where he kept and offered for sale, and sold to the public, paints, varnishes, stains, wall paper, glass, etc., at retail that he purchased from the plaintiff in the state of Mississippi, the goods described in the exhibit to the declaration herein, for which he owed plaintiff the purchase price at the time of the filing of this suit, which goods, within the knowledge of the plaintiff at the time it sold the same, were intended for resale by the said Cagle, and which were incorporated into and became a part of his said stock of merchandise, and that all of said goods so purchased by said Cagle had been sold by him at the time of the service of said writ of seizure except those described in the sheriff's return upon said writ, which goods so seized were a part of the goods sold by plaintiff to said Cagle, as aforesaid; that at the time of said seizure said Cagle owed other creditors sundry sums of money for goods purchased by him upon credit, and that on the 29th day of July, 1921, he filed a bank-

ruptcy petition in bankruptcy in the district court of the United States for the Jackson Division of the Southern District of Mississippi, and was thereafter duly adjudicated bankrupt, and J. P. Hall was elected and qualified as trustee of the estate in bankruptcy, taking possession of all of the property of the said Cagle, except the goods so seized in this proceeding, which, from the time of their seizure by the sheriff on June 17, 1921, have been in the hands of said 'sheriff, where they now are: and that the assets coming into the hands of said trustee will not be sufficient to satisfy the claims of the creditors in said bankruptcy proceeding."

The following questions are presented for consideration:

(1) Whether or not section 3079, Code of 1906 (Hemingway's Code, section 2436), the first section of the purchase-money lien statute, gives the seller a purchase-money lien on goods sold by him to a merchant for the purpose of resale.

(2) If the seller is given a purchase-money lien under the conditions named, whether or not, under the business sign statute (section 4784, Code of 1906; Hemingway's Code, section 3128), appellant can enforce such lien as against the trustee in bankruptcy of the purchaser, and, if the statute does not apply, whether the seller waives his lien by mere knowledge that the goods are intended for resale.

We will consider these questions in the order above set out.

1. Section 3079, Code of 1906 (Hemingway's Code, section 2436), is in this language:

"The vendor of personal property shall have a lien thereon for the purchase money while it remains in the hands of the first purchaser, or of one deriving title or possession through him, with notice that the purchase money was unpaid."

It is argued that the language of the statute is broader than its purpose; that it was not intended by this statute

to give the seller of goods to a merchant for resale a lien for the purchase money; that to give such a lien would be unreasonable and inconsistent with other principles of law well established, and especially would make ineffectual to a large extent the usefulness and efficiency of the federal Bankruptcy Act (U. S. Comp. St., sections 9585-9656.

There can be no question that the language of the statute is broad enough to cover the facts of this case. It is argued that no such purpose was intended by the legislature, because such a construction would render the statute inconsistent with section 1168, Code of 1906 (Hemingway's Code, section 895), which provides among other things, that it shall be a crime to sell personal property upon which there is a lien by contract or by law, without informing the person to whom it was sold of the existence of the lien. It is said that merchants daily make sales of goods without giving the purchaser information as to whether there are any purchase-money liens thereon, and therefore, if the statute is held to be as broad in its purpose as its language, that most, if not all, merchants will be criminals. It seems that a complete answer to that argument is that a merchant so selling goods would not be guilty of violating said statute, for no one would be injured. His seller could not complain, because of the fact that he, at least tacitly agreed to their resale by virtue of his knowledge that they were being bought for that very purpose; and the purchaser without notice would receive no injury, because under the statute he would get a good title.

It is argued further that the legislature could have had no such purpose, in view of the fact that this court has often held that a mortgage on a stock of goods intended for resale was void as to creditors. In the first place, a lien on goods for the payment of their purchase money is not the same character of security as a mortgage on a stock of merchandise intended for resale. In the one case the seller has a lien alone on the goods sold, while in the other

the creditor has a mortgage for his debt, either on the whole or a part of the mortgagor's stock of goods, and the mortgage may be for the purchase money or not. It would probably be within the competency of the legislature to make valid mortgages on stocks of merchandise intended for resale, both as between the parties as well as to the creditors of the mortgagor. And certainly the legislature would have the power to make a mortgage by the purchaser to the seller on the goods bought to secure their purchase price valid as between the parties, as well as against the creditors of the purchaser. The statute by its plain language covers a case of the character here involved. Several cases have been before this court involving a construction of said statute. In none of those cases has the court intimated that such a narrow construction as that contended for should be put upon the statute. Although the exact question was not decided in any of those cases, it was assumed that the statute gave a lien for the purchase money, although the goods were bought for the purpose of resale in due course of business. This was the view taken by the United States circuit court of appeals for the Fifth Circuit in the case of *Norris* v. *Trenholm, Trustee,* 209 Fed. 827, 126 C. C. A. 551, 31 Am. Bankr. Rep. 353, the opinion in which case is well reasoned, and in our judgment sound.

It was held by the United States circuit court of appeals for the Fifth Circuit, in *Martin* v. *Orgain,* 174 Fed. 772, 92 C. C. A. 246, 23 Am. Bankr Rep. 454, that a landlord's lien created by statute was not affected by the Bankruptcy Act, and the same court held, in *Re Georgia Handle Co.,* 109 Fed. 632, 48 C. C. A. 571, 6 Am. Bankr. Rep. 472, that a contractor's or builder's lien for material furnished was not affected by the Act, and in *Re Kerby-Dennis Co.,* 95 Fed. 116, 36 C. C. A. 677, that a lien for wages created by statute was not dissolved or affected by the bankruptcy of the employer. These were all statutory liens not required to be recorded so as to give constructive notice,

and, in our judgment, the argument here made could have been made with as much reason and force in each of those cases.

2. Does the trustee in bankruptcy take this property, as against the appellant, freed from the purchase-money lien under our business sign statute? Section 4784, Code of 1906 (Hemingway's Code, section 3128), is in this language:

"If a person shall transact business as a trader or otherwise, with the addition of the words 'agent,' 'factor,' 'and company,' or '& Co.,' or like words, and fail to disclose the name of his principal or partner by a sign in letters easy to read, placed conspicuously at the house where such business is transacted, or if any person shall transact business in his own name without any such addition, all the property, stock, money, and choses in action used or acquired in such business shall, as to the creditors of any such person, be liable for his debts, and be in all respects treated in favor of his creditors as his property."

We think this question is answered in the negative, not only by the plain terms of the statute itself, but in addition by the construction put upon said statute by this court in the cases of *Kinney* v. *Paine,* 68 Miss. 258, 8 So. 747, *Dodds* v. *Pratt,* 64 Miss. 123, 8 So. 167, and *Frank* v. *Robinson,* 65 Miss. 162, 3 So. 253. In the first case mentioned this court held that the statute had no application whatever in a contest between creditors of a common debtor. In the second case a deed of trust was given by a merchant on his stock of goods to secure the purchase price thereof, and the court held that, although the goods were the property of the merchant, still the deed of trust given to secure the purchase price was coetaneous with the acquisition of title, and therefore the merchant held the goods subject to the deed of trust, which was paramount to any other claim, and that the sign statute did not derange the order of priority among the creditors of said merchant. And in the last case named the court held that the statute did not prevent a recission of sale and recovery

of the goods sold where the sale was induced by false and fraudulent representations by the purchaser; and this court recognized this principle in the late case of *Payne Hardware Co.* v. *Harvester Co.,* 110 Miss. 783, 70 So. 892, in which the court among other things, said:

"The Harvester Company does not come into court, and did not replevy the goods, as a creditor of the insolvent Hardware Company. It claimed, and claims, the goods as the owner of same. There is no question here of prior liens. The Harvester Company does not claim to be a prior lienor, or a preferred creditor; but, to the contrary, it claims to be *the owner of the goods* in controversy, and upon this claim it must stand or fall." (Italics ours.)

The statute, when not complied with, simply makes the property in question the property of the debtor, and liable to his debts, subject, however, to any valid lien thereon, even though such lien be in favor of the seller to secure the purchase money. We conclude, therefore, that the sign statute has no effect on appellant's lien.

It is contended by appellee that the lien given by the statute is waived by the seller in case of a sale of goods to be commingled with the stock of merchandise of the purchaser, a trader, and by the latter resold in the ordinary course of business. There is no claim that appellant expressly waived its lien. The contention is that it was waived by virtue of the fact that appellant knew, when it sold the goods to the bankrupt, that same were purchased for the purpose of resale. Does the fact that the goods were intended for resale by the purchaser, with knowledge of the seller, exclude them from the operation of the said purchase-money lien statute?

Bouvier's Law Dictionary (volume 3, p. 3417) defines "waiver" to mean the relinquishment of a known right, with knowledge of the existence of such right and a purpose to relinquish it. Mere silence on the part of the seller is not sufficient to constitute a waiver, unless such silence exists under circumstances when the seller is called on to speak. Such silence, in the absence of conduct amounting

to an estoppel, will not constitute a waiver, and, in the absence of estoppel, a waiver should be supported by a valuable consideration. We are unable to see any element of estoppel in the mere fact that appellant was silent as to its lien until called upon to take steps to enforce it. Nor, in our opinion, does the fact that the goods were sold for the purpose of resale constitute a waiver. The statute by its language has in view purchases for resale, for the lien only exists while in the hands of the first purchaser or one deriving title through him with notice.

It should be borne in mind that, under the facts of this case, when the petition in bankruptcy was filed, appellant, for the purpose of enforcing his lien, which accrued more than four months theretofore, had had, in accordance with the statute, said goods seized by the sheriff and separated from the balance of the stock of said bankrupt; that therefore it is not a case where at the time of the bankruptcy proceedings the seller has taken no steps to enforce his lien, and the goods on which he claims a lien are part and parcel of the stock of merchandise found in possession of the bankrupt. In the latter case, under the amendment of 1910—subdivision 2, subsection (a) of section 47—of the Bankruptcy Act (U. S. Comp. St. section ——), giving trustees all the rights, powers, and remedies of a creditor holding a lien, it seems clear that the trustee would take the goods freed from the purchase-money lien, 1 Collier on Bankruptcy (12th Ed.) pp. 716, 727, 728, and 729; *In re Wright & Weissinger, Bankrupts* (D. C.), 277 Fed. 514, 47 Am. Bankr. Rep. 283; *Milling Co.* v. *Foote Trustee* (D. C.), 277 Fed. 519, 47 Am. Bankr. Rep. 501. (But, as we understand, that is a federal question.)

While in the former case (which is the present case) we hold that the lien of the seller of the goods is paramount to the rights of the trustee in bankruptcy. We are unable to see how such a holding will result in marring the usefulness and efficiency of the Bankruptcy Act.

Reversed, and judgment here for appellant.

*Reversed.*